IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and | § | |
| STATE OF TEXAS, *ex rel.* | § | |
| L. DAVID PORTER, | § | |
| | § | |
| Relator, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. |
| HCA HEALTH SERVICES OF | § | 3:09-CV-0992 |
| OKLAHOMA, INC., AFZAL | § | |
| NIKAEIN, MEDICAL CITY HOSPITAL, | § | |
| and TEXAS MEDICAL SPECIALITY, | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court are (1) Defendant HCA Health Services of Oklahoma, Inc.'s motion to transfer venue or, in the alternative, motion to dismiss for lack of personal jurisdiction (Docket #30); (2) Defendant HCA Health Services of Oklahoma, Inc.'s motion to dismiss pursuant to Rules 9(b) and 12(b)(6) (Docket #32); (3) Defendant Medical City Dallas Hospital's Motion to Dismiss (Docket #34); (4) Defendant HCA Health Services of Oklahoma, Inc. and Defendant Medical City Dallas Hospital's unopposed request for judicial notice (Docket #47); and (5) Porter's motion for leave to amend (Docket #44). After reviewing the Parties' briefing, the evidence, and the applicable law, the Court DENIES HCA's Motion to Transfer Venue (Docket # 30), DENIES HCA's motion to dismiss for lack of personal jurisdiction (Docket # 30), GRANTS in PART and DENIES in PART Medical City's and HCA's 12(b)(6) motions (Docket #s 32, 34), GRANTS Defendants' request for

1

judicial notice (Docket #47) and DENIES as MOOT Porter's request for leave to amend (Docket #44).[1]

## FACTUAL BACKGROUND

L. David Porter ("Porter") is a former Assistant Director of the tissue typing laboratory at the OU Medical Center Laboratory at Oklahoma University Medical Center ("OUMC" or the "Lab"). The medical center, including the Lab, is operated by Defendant HCA Health Services of Oklahoma, Inc. ("HCA"). Porter worked at the Lab from 2002-2005. Defendant Afzal Nikaein was the Lab's Director. Nikaein was also the Director of another lab – Defendant Texas Medical Speciality Inc. ("TMSI").[2] TMSI operates the lab at Defendant Medical City Dallas Hospital ("Medical City").

Clinical laboratories that perform clinical tests on specimens from the human body are regulated by federal law, specifically, by the Clinical Laboratories Improvement Act of 1967 and the Clinical Laboratory Improvement Amendments, which was enacted in 1988 ("CLIA"). 42 U.S.C. § 263a. CLIA was enacted to protect the public from poor laboratory services by strengthening and improving proficiency testing, thereby enhancing patient safety. CLIA requires labs to participate several times a year in a proficiency testing program ("PT"), through which an independent scientific agency sends human tissue samples to the labs for testing. The labs are then graded on their results. 42 U.S.C. § 263a(3).

---

[1] All Parties puts their citations in footnotes. In this District and according to Blue Book Rule B2, citations should be presented in the text of the brief.

[2] Defendants Nikaein and TMSI filed an answer to Porter's Amended Complaint. They did not move for dismissal of the claims against them. (Docket #18.) For purposes of this order, "Defendants" will refer to the movant defendants. "All Defendants" will include Nikaein and TMSI.

Defendants performed tissue compatibility testing on transplant organs before transplantation. According to Porter, the TMSI lab was sharing and/or comparing its PT results with the OUMC Lab, in violation of CLIA regulations, which prohibit labs from communicating about their PT results until after the testing results are reported. *See* 42 C.F.R. § 493.801(3). These communications were allegedly facilitated by the labs' common-Director, Nikaein.

## DISCUSSION

On May 29, 2009, Porter filed this *qui tam* action against TMSI, HCA, Nikeain, and Medical City alleging violation of the Federal False Claims Act, 31 U.S.C. §§ 3729, *et. seq.*, and violation of the Texas Medicaid Fraud Prevention Act,  Tex. Hum. Res. Code Ann. § 36.002 (Vernon). (Docket #s 1, 14.)  Defendants move to dismiss Porter's claims on several bases.

**A. Personal Jurisdiction.**

HCA moves to dismiss Porter's claims for lack of personal jurisdiction.  A motion for lack of personal jurisdiction must be considered by the district court before other challenges since the court must find jurisdiction before determining the validity of a claim. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).

The Federal False Claims Act ("FCA") permits nationwide service of process on a defendant. *See* 31 U.S.C. § 3732(a). When determining whether a federal court may exercise personal jurisdiction over a defendant in a suit based upon a federal statute that provides nationwide service of process, the Fifth Circuit has indicated that so long as the defendant has had minimum contacts with the United States, the Due Process clause of the Fifth Amendment requires no further inquiry. *See, e.g., Bellaire Gen. Hosp. v. Blue Cross Blue Shield,* 97 F.3d 822, 826 (5th Cir. 1996); *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994).

3

Since HCA is an Oklahoma resident, it is by definition a citizen of the United States. Therefore, HCA has the requisite contacts required to exercise personal jurisdiction over Defendants under the FCA's provision for nationwide service of process. Thus, the Court DENIES HCA's motion to dismiss for lack of personal jurisdiction.

## B. Transfer of Venue.

HCA also moves to transfer venue in this case. In order to obtain a new federal venue, 28 U.S.C. § 1404 requires that the transfer be "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. 1404(a); *In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008). Because the movant seeks to disrupt the plaintiff's choice of venue, the burden lies with the movant to demonstrate why the desired division is the most appropriate. *See id.* at 381. The decision to transfer a case is within the sound discretion of the district court. *The Whistler Group, Inc. v. PNI Corp.*, No. 3:03-CV-1536-G, 2003 WL 22939214, at *2 (N.D. Tex. Dec. 5, 2003) (Fish, J). When the transferee venue is not clearly more convenient than the plaintiff's chosen venue, the plaintiff's choice should be respected. *Volkswagen,* 545 F.3d at 314-315. But when the movant demonstrates that the transferee venue is clearly more convenient, it has shown good cause and the district court should therefore grant the transfer. *Id.*

The first issue that must be addressed in ruling on a motion to transfer venue under § 1404(a) is whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action "might have been brought." *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). The second issue is whether the transfer would allow the interests of justice to be better served. *The Whistler Group*, 2003 WL 22939214, at *2.

4

The Fifth Circuit has adopted the private and public interest factors as proper for the determination of whether a § 1404(a) venue transfer is for the convenience of the parties and witnesses and in the interest of justice. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004). The public factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

Although these factors are proper for most transfer cases, they are not necessarily exhaustive or exclusive. *Volkswagen*, 545 F.3d at 315. Moreover, no single factor is of dispositive weight. *Id.*

HCA argues the Court should transfer venue to the Western District of Oklahoma because: (1) the case could have originally been filed there and (2) the venue would be more convenient for the parties and witnesses that would be required to appear before the court. In response, Porter claims his choice of venue should be honored and HCA has failed to show that the Western District of Oklahoma would be a more convenient venue for this case.

### 1. Whether the Case Could Have Been Brought in W.D. Oklahoma.

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen*, 545 F.3d at 312. A civil action may be brought in a "judicial district in which a substantial part of the events or omissions giving rise to the claim

occurred. 28 U.S.C. § 1391(b)(2). When a case is being filed in a multi-district state, federal statutes provide that, "For the purposes of venue … a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

The FCA states: "Any action under section 3730 [31 U.S.C. § 3730] may be brought in any judicial district in which…any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 [31 U.S.C. § 3729] occurred." 31 U.S.C. § 3732(a). HCA, being one of the listed defendants, resides, transacts business, and can be found in the Western District of Oklahoma. Additionally, some of the alleged violations occurred in that district. Thus, this case could have been brought in the Western District of Oklahoma.

### 2. Private and Public Interest Factors.

The first factor to be addressed is the relative ease of access to sources of proof. HCA contends this factor weighs in favor of transfer because the vast majority of relevant documents are located in Oklahoma. However, "[b]ecause modern technology permits the rapid transfer, sharing, and copying of documents, the location of documents and business records usually receives little weight in the transfer analysis." *See e.g., Sarmiento v. Producer's Gin of Waterproof, Inc.,* 439 F. Supp. 2d 725, 732 (S.D. Tex. 2006); *E.E.O.C. v. Mustang Mobile Homes, Inc.,* 88 F. Supp. 2d 722, 726 (W.D. Tex. 1999).

In this case, the transfer of documents to either location would be relatively easy and the practical issues associated with transport would be shared equally by either party. This factor does not weigh heavily in favor of transfer.

The second private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. "Since the defendant bears the burden to demonstrate that transfer is appropriate, the defendant, 'must specifically identify the key witnesses and outline the substance of their testimony.'" *Patent Compliance Group, Inc. v. Hunter Fan Co.*, No. 3:10-CV-0359-P, 2010 U.S. Dist. LEXIS 108966, at *5 (N.D. Tex. 2008) (Solis, J.) (citation omitted). HCA has failed to identify any of its non-party witnesses who reside outside of the Northern District of Texas or more than 100 miles from this Court. If HCA is referring to its employees as non-party witnesses, this Court does not recognize employees in that way since they may be compelled by their employer to appear. *See Patent Compliance Group*, 2010 U.S. Dist. LEXIS, at *5. For this reason, the Court finds that this factor does not weigh in favor of transfer.

The availability and convenience of witnesses has been held to be the most significant factor in deciding a § 1404(a) motion to transfer. *See Bush v. Robertson*, No. 3:05-CV-2043-L, 2006 WL 1222031, at *5 (N.D. Tex. May 5, 2006). HCA insists a transfer to the Western District of Oklahoma is for the convenience of all parties involved. "A transfer of venue must not simply 'shift the expense and inconvenience from one party to the other.'" *See Patent Compliance Group*, 2010 U.S. Dist. LEXIS, at *7. Here, HCA is one of four Defendants, among which it is the only one outside the Northern District of Texas. The Court finds this factor disfavors transfer because it would merely shift the burden from HCA to Porter and the other defendants.

Finally, a change of venue would simply shift the burden of travel from HCA's witnesses to the other parties' witnesses. HCA has not shown that Oklahoma is a more convenient venue for the witnesses. In sum, the private interest factors favor the denial of HCA's Motion to Transfer Venue to the Western District of Oklahoma.

The first public interest factor to be addressed is the administrative difficulty that may arise from court congestion. When the possibility of delay does not weigh against a transfer, the parties are not likely to be prejudiced by a transfer. *See Lacefield v. Lockhead Martin Corp.*, No. Civ. A. 3:96-CV-2866-H, 1997 WL 209295, at *2 (N.D. Tex. Apr. 21, 1997) (Solis, J.). "We recognize that in rare and special circumstances a factor of "delay" or of "prejudice" might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence." *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003). HCA has failed to put forward any convincing argument that the Western District of Oklahoma is any more convenient than the Northern District of Texas when considering court congestion. For this reason, the Court finds that court congestion does not favor transfer.

The next factor is the consideration of having local interests decided at home. As the Court has recognized in the past, this forum has a significant interest in the outcome of any dispute in which a resident of this district is alleged to have suffered harm at the hands of a non-resident. *See e.g., Mannatech, Inc. v. K.Y.C., Inc.*, No. 3:06-CV-0813-P, 2006 WL 2216033, at *3 (N.D. Tex. Aug. 3, 2006) ("[T]he State of Texas has an interest in protecting its citizens from the tortious conduct of nonresidents aimed at its own residents.")

Here, Plaintiff alleges HCA defrauded the State of Texas. Therefore, Texas and its residents have an interest in the resolution of this case. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 318 (transfer analysis should consider "those actually affected  – directly or indirectly – by the controversies and events giving rise to a case.")  The Court finds the local interest factor weighs against transfer out of this district.

8

The Court finds that HCA has not established that the Western District of Oklahoma is a clearly more convenient forum. Instead, the Court concludes that transfer would serve primarily to shift the inconvenience from one party to another. HCA's motion to transfer venue is DENIED.

## C. The Texas Medicaid Fraud Prevention Act (TMFPA).

Porter's Complaint alleges the government paid Defendants based on false claims and certifications made between 2002 and 2004. Because the alleged conduct occurred in 2002, the 2002 version of the TMFPA governs this action.[3] The 2002 version of the TMFPA states, "The state may elect to intervene and proceed with the action not later than the 60th day after the date the attorney general receives the petition and the material evidence and information." Tex. Hum. Res. Code § 36.102(c)(1997)(amended 2005). "If the state declines to take over the action, the court shall dismiss the action." *Id.*

Since the State of Texas did not intervene on or before the 60th day after the attorney general received the petition, Porter's TMFPA claim is DISMISSED.

## D. The Federal False Claims Act.

### 1. False Claims Act - Applicable Law.

Dismissal is appropriate under Rule 12(b)(6) only if the complaint, viewed in the light most favorable to plaintiff, lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Federal False Claims Act ("FCA") covers all fraudulent attempts to cause the government to pay out sums of money. *United States v.*

---

[3] The TMFPA reads: This Act applies only to conduct that occurs on or after the effective date [May 4, 2011] of this Act. Conduct that occurs before the effective date of this Act is governed by the law in effect at the time the conduct occurred, and the law is continued in effect for that purpose. Act of April 25, 2007, ch. 29, §, 2007 Tex. Gen. Laws 28.

*Southland Mgmt. Corp.*, 326 F.3d 669, 674-75 (5th Cir. 2003). The FCA does this by making it unlawful for a person to knowingly present or cause to be presented to the government "a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729 (Supp. 2011).

Under the *qui tam* provision of the statute, any individual can sue on behalf of the United States government to recover for the government's payment of fraudulent claims. 31 U.S.C. § 3730(b). Invoking this provision, Porter alleges Defendants violated CLIA, which prohibits testing labs from "intentionally refer[ring] its proficiency testing samples to another laboratory for analysis." 42 C.F.R. §493.801(b)(4); (Docket # 14 ¶¶46-51.)

### 2. False Certification Claim.

One type of FCA claim is the "false certification" claim. The term "false certification" generally refers to a case in which a defendant who makes a claim for payment from the government submits a document expressly certifying compliance with the law, when the defendant did not in fact comply with the requirement, rendering the certification, and therefore, the claim for payment "false". Claire M. Sylvia, *The False Claims Act: Fraud Against the Government* § 4.33 (Apr. 2011). In *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp*, the Fifth Circuit described the "false certification" theory of FCA liability in this way: when "the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent legal claim when he or she falsely certifies compliance with that statute or regulation." 125 F.3d 899, 902 (5th Cir. 1997). The *Thompson* court also recognized that "claims for services rendered in violation of a statute do not necessarily constitute false or fraudulent claims under the FCA." *Id.* Rather, a claimant submits a false claim where he falsely certifies compliance with a statute or regulation, and the government has

conditioned payment upon that certification. *Id.*

Porter and Defendants argue extensively at this motion-to-dismiss stage about whether the government has conditioned Medicare payments on CLIA compliance. In support of their arguments, the Parties submit various documents, including cost reports, agency regulations, administrative rulings, agency manuals, and trial testimony from other cases.

At the pleading stage, Porter's obligation is to provide grounds of his entitlement to relief. Dismissal is appropriate only if the complaint, viewed in the light most favorable to Plaintiff, lacks enough facts to state a claim to relief that is plausible on its face. Porter has pled that a lab must be in compliance with CLIA to receive government reimbursement for its services. (Compl. ¶ 46.) He argues Defendants violated CLIA by committing improper referrals between 2002 and 2004. (Compl. ¶¶ 47-48.) Porter alleges Defendants submitted reimbursement claims to the government, even though they were not entitled to recover for those services. (Compl. ¶ 49.) He alleges Defendants falsely certified their compliance with the applicable laws in their Cost Reports. (Compl. ¶¶ 33, 49).

The issue of whether the government has conditioned Medicare payment on CLIA compliance is a complex one – requiring the Court to go outside the Complaint to extrinsic evidence, such as manuals, testimony, and administrative rulings. To consider such evidence at this time would effectively convert this 12(b)(6) motion to a summary judgment motion. Because this case is in the motion to dismiss stage, the Court will review the facts and allegations in the Complaint in the light most favorable to Porter. In doing so, the Court concludes there is plausible ground on which Porter's FCA claim rests. The Court will consider summary judgment evidence at the summary judgment stage. Defendants' motion to dismiss Porter's FCA claim is hereby denied.

### 3. Fraudulent Inducement.

Porter argues even if CLIA compliance is not a condition of payment, his FCA claims can be based on fraudulent inducement. He contends Defendants falsely represented to CMS that their labs were in compliance with CLIA – knowing full well they were not. The government relied on the false representations and awarded Defendants government benefits to which they were not entitled. (Docket #44 at 17-18.)

Defendants argues an FCA claim cannot be based on the theory of fraudulent inducement, which contains the following elements: (1) a contract procured by fraud; (2) Defendants had no intention of performing; (3) and Defendants obtained payments to which they were not entitled. Defendants contends the first two elements have not been pled and the third element is negated by the CLIA regulations that entitled Defendants to receive payments.

An individual violates the FCA when he knowingly presents a false claim for payment or approval. *See* 31 U.S.C. § 3729. In *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, the Fifth Circuit imposed FCA liability on a payee for fraudulently inducing the government to pay a claim. 575 F.3d 458 (5th Cir. 2009). The *Longhi* court adopted a test for establishing fraudulent inducement under the FCA: (1) a false statement or fraudulent course of conduct; (2) made with scienter; (3) that was material; (4) that caused the government to pay out money (*i.e.*, that involved a claim). *Id.* at 467. In *Longhi*, as in this case, the defendant did not submit false claims for payment. *Id.* Rather, the *Longhi* defendant submitted false statements in grant proposals submitted to the Department of Defense. *Id.* at 470-72. The Department of Defense awarded the defendant grants on the basis of the false statements and paid money for work the defendant subsequently performed. *Id.* The Fifth Circuit found a violation of the FCA under the test it established, while

12

emphasizing the principle that "FCA liability may be imposed 'when the contract under which payment is made was procured by fraud.'" *Id.* at 467-68.

By contrast, in this case, Porter did not allege that Defendants made false statements to induce the government to allow them to participate in the Medicare program. *See e.g., United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 748 F. Supp. 2d 95, 114-15 (W.D. Tex. 2010); *see also* Claire M. Sylvia, *The False Claims Act: Fraud Against the Government* § 4:29 (Apr. 2011). Therefore, Porter's FCA claim based on fraudulent inducement is not actionable.

### 4. Reverse False Claim.

Porter also argues his FCA claim is viable under the "reverse false claim" provision of 31 U.S.C. § 3729(a)(7). Section 3729(a)(7) imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the government." *Id.* In a reverse false claims suit, the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated." *United States ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004).

Porter alleges Defendants concealed the fact they were not in compliance with CLIA and therefore were not entitled to accept interim reimbursements. (Docket # 44 at 21-22.) He concludes that because of Defendants' false statements in the Cost Reports, the government did not seek to recover the improperly paid claims.

Defendants rely heavily on *Bain*, a Fifth Circuit case in which the defendant allegedly submitted false emissions records in an attempt to avoid a fine or monetary penalty to which it might have been subject if the government had known of the actual emissions and then decided to seek

fines or civil penalties against the company. *Bain*, 386 F.3d at 654. Similarly, in this case, Defendants allegedly submitted false certifications to avoid revocation of their lab certificates and Medicare participation. In *Bain* and in this case, there was no allegation that the federal government imposed any such penalty or instituted any kind of proceeding against Defendants that could result in such a penalty. *Id.* The Fifth Circuit held the defendant did not have an "obligation" to pay money to the government because the "reverse false claims act does *not* extend to the potential or contingent obligations to pay the government fines or penalties which have not been levied or assessed (and as to which no formal proceedings to do so have been instituted) . . ." *Id.* at 653 (emphasis in original).

Porter argues *Bain* is distinguishable because it dealt only with the issue of whether reverse false claims act liability can be based on attempts to avoid a potential fine or monetary penalty. *Bain*, 386 F.3d at 657 (holding reverse false claims does not impose liability where there is no economic relationship between the government and the defendant). Defendants argue the reimbursement obligation in this case arises by virtue of the economic relationship between Medicare and Defendants. (Docket # 44 at 22-23.)

To impose liability under the reverse false claims act provision, there must be a "clear" obligation or liability to the government. Congress's purpose in enacting subsection (a)(7) was to ensure that one who makes a false statement in order to avoid paying money owed the government "'would be equally liable under the Act as if he had submitted a false claim to receive money.'" *See United States ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505, 514 (E.D. Pa. 2010) (citing legislative history).

In this case, Porter is essentially alleging that Defendants failed to refund the false claims the

14

government paid. He is merely recasting his false statement claim under § 3729(a)(3). This type of redundant false claim is not actionable under subsection (a)(7). See *Thomas*, 708 F. Supp. 2d at 514. Additionally, Defendants did not have an existing obligation to reimburse the monies it had received from Medicare because the government has never imposed any obligation on Defendants to reimburse any Medicare payments.

Because Porter is using subsection (a)(7) to make a redundant false statement claim under subsection (a)(2), and because he has not alleged the existence of a clear obligation or liability to the government that Defendants failed to pay, he has not stated a reverse false claim under § 3729(a)(7).

## CONCLUSION

After reviewing the Parties' briefing, the evidence, and the applicable law, the Court DENIES HCA's Motion to Transfer Venue (Docket # 30), DENIES HCA's motion to dismiss for lack of personal jurisdiction (Docket # 30), GRANTS in PART and DENIES in PART Medical City's and HCA's 12(b)(6) motions (Docket #s 32, 34); GRANTS Defendants' unopposed request for judicial notice (Docket #47) and DENIES as MOOT Porter's request for leave to amend (Docket #44).

Signed this 30th day of September 2011.

*Jorge A. Solis*

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE